MR. JUSTICE WEBER,
dissenting:
I commend the majority for its historical analysis and careful presentation of the constitutional principles which apply in equal protection cases. However, I strongly disagree with the conclusion that, under the facts of this case, there is a fundamental right to full legal redress which has been offended. I concur in the dissent of Chief Justice Turnage and agree that this Court should re-examine its interpretation of Art. II, Section 16, Mont. Const. 1972, as contained in White and the majority opinion here.
*238 I
Article II, Section 18, Mont. Const. 1972, provides:
“The state, counties, cities, towns, and all other governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by ⅔ vote of each house of the legislature.” [Emphasis supplied.]
The underscored portion was added by a constitutional amendment and approved by referendum vote of the people in 1974. As pointed out in the majority opinion, prior to that amendment, the state and various governmental entities had no immunity from suit under the 1972 Constitution. The constitutional referendum added the exception.
It is apparent that the people intended that the state could make specific provisions for immunity so long as those provisions were adopted by a % vote of each house. By requiring the Vz vote rather than the normal majority vote, the people demonstrated their requirement for broad agreement as to any immunity adopted.
Section 2-9-107, MCA, was adopted by ⅔ vote of each house of the legislature and was also approved by the governor. The adoption of that statute appears to satisfy the requirements for immunity under Art. II, Section 18, Mont. Const. 1972. However, White and Pfost hold that no such immunity exists.
White held unconstitutional Section 2-9-107, MCA 1983, which limited recovery to economic damages and eliminated the right to recover other types of damages from the state. White thereby advised the people of Montana, the members of the legislature and the governor, in particular, that they could not provide for immunity under section 18 by limiting recovery to certain types of damages or components of injury.
The majority opinion in Pfost now tells the people, members of the legislature and the governor that they cannot adopt a statute that in any way limits the dollar amount of recovery from the State as legal redress for injury to person, property or character.
If limited sovereign immunity is to be granted, it requires either a limitation on the type of damages for which compensation can be paid, or a dollar limitation upon the total amount of recovery. Both of these alternatives have now been effectively eliminated by the opinions of this Court. Absolute immunity appears to be the only remaining alternative. However, whether a statute that grants total sovereign immunity would still be permissible is an unsettled ques *239 tion. The effect of White and Pfost appears to be an improper judicial repeal of the exception in Art. II, Section 18, Mont. Const., as adopted by the people of Montana in 1974.
II
Art. Ill, Section 6 of the 1889 Montana Constitution provided that courts of justice “shall be open to every person, and a speedy remedy afforded for every injury of person, property or character. . .” This is substantially the same provision as Art. II, Section 16 of the 1972 Montana Constitution.
The majority points out that prior to adoption of the 1972 constitution, the State and its agents enjoyed total immunity from suit for tort action unless a policy of liability insurance existed. If the rationale of the majority in this case were applied, such total immunity would have been constitutionally improper. In a similar manner, the statutory reference to liability insurance, under which a court could reduce any judgment to a figure within the limits of insurance coverage, would also have been improper. Certainly the reduction of a judgment to the amount of available insurance would be unconstitutional under the majority analysis in the present case.
I point briefly to our constitutional history in order to emphasize how the majority’s conclusion suggests that for many years prior to White, the thinking on the part of this Court and the people of Montana was constitutionally off base. I disagree.
III
What choices do the legislature and the people of Montana have in the event they desire to adopt immunity from suit, as authorized by Art. II, Section 18, Mont. Const. 1972? Unfortunately I am not able to assist by giving any sense of direction. If I understand the thinking of the majority correctly, legislation which in any way restricts recovery of any damages claimed by an injured party would be impermissible. That seems to leave only one alternative: the adoption by a % vote of each house of a statute which grants total immunity to the state, counties, cities, towns and all other local governmental entities. If such a statute were enacted, it apparently could not contain any limitation with regard to insurance limits because of the holding in this case. Apparently absolute immunity adopted by a % *240 vote of each house is the only choice that has not been rejected by this Court. I regret that this is the tragic choice which remains.
IV
I find that Art. II, Section 16, Mont. Const., must be compared to Section 18 of that same article. The canons of constitutional construction to be applied in comparing two different provisions require that the constitution be considered as a whole, that all provisions bearing upon the same subject matter receive appropriate attention and be construed together, and that specific provisions control broad and general provisions. See Jones v. Judge (1978), 176 Mont. 251, 255, 577 P.2d 846, 849.
In construing the two constitutional provisions here, we note that the people of Montana properly adopted an exception. They amended Art. II, Section 18 several years after they adopted Section 16. We also note that Section 16 is the broad and general provision guaranteeing access to the courts and a remedy for every injury. Section 18, on the other hand, is a specific provision allowing limitations on legal redress against the government. Section 2-9-107, MCA, was adopted in accordance with Section 18. The result is that the various governmental entities became immune from damages in excess of $300,000 for each claimant and $1,000,000 for each occurrence. I conclude that Section 2-9-107, MCA, is a constitutionally authorized limitation under Art. II, Section 18 of the Constitution.
V
Even if I were to accept the holding of White and apply the strict scrutiny test to the legislation as required by the majority here, I would not reach a conclusion that Section 2-9-107, MCA, is unconstitutional. I find the extensive legislative findings set forth in Section 2-9-106, MCA, to be compelling. The legislature recognized that unlimited liability makes it increasingly difficult, if not impossible, to purchase insurance coverage. The legislature emphasized the high risk activities which must be performed by governmental entities and pointed out that all of such functions and services entail a potential for civil liability far beyond the potential liability of corporations or other persons in the private sector. The legislature further found that these functions are necessary components of government and that despite limited resources and competition for these re *241 sources between various programs, the services should be furnished to the people of this state. The legislature found that liability for damages for tort is more than a cost of doing business, and that its effect upon government goes far beyond a simple reduction in governmental revenues. The legislature concluded that unlimited liability would precipitate severe budget problems. Of particular significance are the following:
“. . . The legislature finds these potential results of unlimited liability for tort damages to be unacceptable and further finds that, given the realities of modern government and the litigiousness of our society, there is no practical way of completely preventing tortious injury by and tort damages against the state and other governmental entities. The legislature therefore expressly finds that forced reduction in critical governmental services that could result in unlimited liability of the state and other governmental entities . . . constitutes a compelling state interest requiring the application of the limitations on liability and damages provided in parts 1 through 3 of this chapter.”
The governor concurred in these findings when he signed the legislation.
I find these legislative findings and statements of purpose to be a clear, understandable and cogent explanation for the conduct of the legislature and the governor in passing this bill. These findings express major policy decisions which are peculiarly within legislative competence. For example, the financial impact of abolishing the monetary limit on sovereign immunity is a matter which could be clarified by legislative hearings. That process is not available to this Court. Unlike the legislature, we have no way of studying the economic and social trade-offs which might be involved if the State is subjected to unlimited liability. I would hold that the legislative findings are sufficient to establish a compelling state interest. As a result, I would conclude that even under the equal protection analysis of the majority, Section 2-9-107, MCA, is constitutional.